UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 16-20549-CR-SCOLA

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

ODETTE BARCHA,

    *Defendant.*

_____/

### ODETTE BARCHA'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(C)(1)(A)

The Defendant, **ODETTE BARCHA**, by and through undersigned counsel, respectfully moves this Court to grant her motion for compassionate release pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A) and the current COVID-19 Pandemic and to issue an order stating that the remainder of her sentence be served on home confinement. As grounds therefore, we aver the following:

Pursuant to the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of the 18 U.S.C. 3553(a) sentencing factors and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. 1B1.13. The fact that **ODETTE BARCHA** (hereafter "**MS. BARCHA**") is not a danger to the community and suffers from a serious chronic underlying disease, Lupus[1], which makes her immunocompromised and thus at great risk for not only contracting but also succumbing to COVID-19, causes her to fall

---

[1]    See PSR, ECF № 1149, at page 21, ¶ 86.

squarely within the Sentencing Commission's standards for reduction of sentence. In addition to Lupus, Ms. **BARCHA** suffers from a comorbidity of other underlying medical issues, including rheumatoid arthritis, diverticulosis and hypertension, which enhance her susceptibility to the coronavirus. We respectfully ask the Court to consider this motion on an expediated basis as each day in custody brings a renewed and unthinkable risk to **MS. BARCHA'S** life.

I.
## BACKGROUND

On January 23, 2019, **MS. BARCHA** accepted responsibility for her actions and pleaded guilty to conspiracy to defraud the United States and pay and receive health care kickbacks, in violation of 18 U.S.C. § 371. Thereafter, **MS. BARCHA** served as a critical government witness at the trial of Philip Esformes, *United States v. Esformes*, 16-cr-20549-Scola. On April 3, 2019, **MS. BARCHA** was sentenced to fifteen (15) months imprisonment, (ECF № 1242). Thereafter, **MS. BARCHA** filed several unopposed motions to continue her surrender date due to her continued cooperation with the government. Furthermore, during the entire time **MS. BARCHA** was out of custody (pretrial and post-sentencing) she was hyper-compliant with all the terms of her supervised release. **MS. BARCHA** is currently serving her prison sentence at FCI Aliceville in Aliceville, Alabama.

On March 31, 2020, **MS. BARCHA** filed an administrative relief request with FCI Aliceville likewise seeking compassionate release in Alabama. A copy of the herein referenced request is attached hereto and incorporated by reference as Exhibit № 1. We respectfully ask the Court to waive the 30-day waiting period for any response by the Warden because waiting for a response could cost **MS. BARCHA'S** life. This is especially

true since inmates at FCI Aliceville have reported having great difficulty getting any type of response from the Warden regarding their administrative relief request due to the COVID-19 virus,

> 'We inmates want Trump and William Barr to release non-violent, minor crimes, and elderly inmates, just like the state and counties are doing,' Lisa Marie Casey, a 45-year-old, wheelchair-bound inmate serving a 24-month sentence at FCI Aliceville, a federal women's prison in Alabama, wrote in an email to *Reason* today. 'Warden [Patricia] Bradley is not taking anyone's compassionate release requests, as I have sent in three with medical documentation […] and still nothing. I am not the only one.'

*Reason* (April 8, 2020), available at https://reason.com/2020/03/24/advocates-and-lawmakers-urge-trump-administration-to-release-elderly-inmates-vulnerable-to-coronavirus/.

## II.
## ARGUMENT AND MEMORANDUM OF LAW

The passage of section 603 of the First Step Act in 2018 changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP.

Courts are now authorized to consider a defendant's motion, even one which the BOP opposes, and order resentencing if a resentencing court finds that "extraordinary and compelling reasons" warrant a reduction and such a reduction is consistent with the

Section 3553(a) factors. *Id.* Resentencing courts are also advised that any decision to reduce a previously ordered sentence be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Here, given COVID-19 and **Ms. Barcha's** chronic health conditions, "extraordinary and compelling reasons" exist which warrant a sentence reduction consistent with Section 3553(a) factors.

On April 1, 2019, **Ms. Barcha** filed a sentencing memorandum (ECF № 1215), wherein she sought a three (3) month variance to the recommended guideline sentence based on her pre-existing medical conditions, which significantly compromise her physical health. Due to this unparalleled health crisis in our country and its expected widespread arrival in our prisons, coupled with **Ms. Barcha's** fragile physical health, we are extremely concerned that when (and not if) COVID-19 spreads into FCI Aliceville it will be a death sentence for **Ms. Barcha**. **Ms. Barcha** is fifty-three (53) years old and is suffering from a comorbidity of medical issues that include: Lupus, hypertension, rheumatoid arthritis, and diverticulosis.

Terrence Windham, a union representative, corrections officer and an Aliceville city councilman has already expressed concerns about the possibility of the virus spreading in FCI Aliceville,

> 'Mainly my concerns are that we don't have equipment including cleaning supplies and testing supplies,' Windham said. 'If someone does have Coronavirus that they are being tested and isolated so it won't spread to the inmate population and most importantly to the staff members.' Windham believes the prison does not have enough cleaning supplies and face masks. 'It is their responsibility to make sure we have all the cleaning supplies that we need,' he said. 'The standard cleaning supplies the bureau uses is a little watered down compared to your average Clorox or Lysol would be. So those are the concerns we have as far as trying to clean up this virus as well.'

Mr. Windham's concerns are valid. Prisons are ill-equipped to prevent the spread of COVID-19. Public health experts recommend containing the virus through measures such as social distancing, frequently disinfecting shared surfaces, and frequently washing hands or using hand sanitizer.[2] Joseph J. Amon, an infectious disease epidemiologist and Director of Global Health and Clinical Professor in the department of Community Health and Prevention at the Drexel Dornsife School of Public Health, has studied infectious diseases in detention settings and states:

> Detention facilities have even greater risk of infectious spread because of conditions of crowding, the proportion of vulnerable people detained, and often scant medical care. People live in close quarters and are also subject to security measures which prohibit successful 'social distancing' that is needed to effectively prevent the spread of COVID-19. Toilets, sinks, and showers are shared, without disinfection between use. Food preparation and food service is communal, with little opportunity for surface disinfection. The crowded conditions, in both sleeping areas and social areas, and the shared objects (bathrooms, sinks, etc.) will facilitate transmission. Amon Decl. ¶ 20, Def. Reply Br. Ex. A, ECF No. 134-1. Some jails and prisons have already become COVID-19 hotspots. For instance, the infection rate in New York City jails is far outpacing the infection rate in the city as a whole.[3] FCI Oakdale, a BOP facility in Louisiana, recently 'exploded with coronavirus' cases, leading to the death several inmates and positive test for many.

---

[2]   See, e.g., How to Protect Yourself, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; Dr. Asaf Bitton, Social distancing in the coronavirus pandemic — maintaining public health by staying apart, Boston Globe (Mar. 14, 2020), https://www.bostonglobe.com/2020/03/14/opinion/social-distancing-coronavirus-pandemic-maintaining- public-health-by-staying-apart/.

[3]   See Elizabeth Weill-Greenberg, New York City Jails Have an Alarmingly High Infection Rate, According to an Analysis by the Legal Aid Society, The Appeal (Mar. 26, 2020), https://theappeal.org/new-york-city-jails- coronavirus-covid-19-legal-aid-society/.

Furthermore, now both the Attorney General and the Senate have issued statements indicating that inmates should be transferred to home confinement if vulnerable to COVID-19.  The Attorney General, although expressing confidence in BOP's ability to keep inmates safe, issued a recent memorandum encouraging release to home confinement for inmates like **Ms. Barcha** who are part of the high-risk population for contracting and succumbing to COVID-19, are non-violent, and pose minimal likelihood of recidivism and thus, might be safer serving their sentences in home confinement rather than in BOP facilities.  A copy of the Attorney General's Memorandum dated March 26, 2020, is attached hereto and incorporated by reference herein as Exhibit № 2.  The Attorney General provided the following non-exhaustive list of discretionary factors that should be considered when assessing whether an inmate should be granted home confinement:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and. Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum-security facilities;

- The inmates conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score bot receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release

would present a lower risk of contracting COVID-19 than the inmate would face under BOP facility;

- The inmate's crime of convictions, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

**MS. BARCHA** meets every single one of the above factors delineated in Attorney General Barr's Memorandum. People with Lupus are considered immunocompromised and therefore, are at a greater risk for infections in general because of their underlying disease. *Lupus Research Alliance*, April 8, 2020, available at https://www.lupusresearch.org/coronavirus-disease-info-for-people-with-lupus/. The CDC has warned that people of any age who have serious underlying medical conditions are at a higher risk for severe illness from COVID-19. With an underlying disease like Lupus, which severely compromises an individual's immune system, if **MS. BARCHA'S** contracts COVID-19 her chances of survival are extremely low. This is especially true since she also suffers from other chronic underlying diseases such as hypertension, which further compromise her ability to fight this aggressive virus.

Furthermore, **MS. BARCHA** is being held at a low security facility and her conduct at the prison has been exceptional. **MS. BARCHA**, as reflected in her request to the Warden for administrative relief, has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which she will be confined upon release would present a lower risk of contracting COVID-19 than if she would face in FCI Aliceville. **MS. BARCHA** would finish the remainder of her home confinement sentence at the father of her child's residences located in Miami,

Florida. The only other person who resides at that location is the father of her child. Moreover, any and all financial expenses, including medical expenses, will be paid for by her mother and sister. Finally, **Ms. Barcha's** crime of conviction is non-violent and since her acceptance of responsibility she has been cooperating extensively with the government. Thus, she poses absolutely no risk of recidivism and is not a danger to the community.

Here, while the 30-day period since the Warden's receipt of **Ms. Barcha's** request for compassionate release due to the threat of coronavirus infection has not yet passed, this Court can construe the exhaustion requirement as futile given the urgency of this national emergency and rapid spread of the pandemic.

### III.
### WAIVER OF THE 30-DAY REQUIREMENT FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(c)(1)(A) BECAUSE OF THE URGENT RISK OF FATAL INFECTION

**Ms. Barcha** filed her petition/request with the Warden on March 31, 2020. Under section 3582(c)(1)(A), **Ms. Barcha** would ordinarily be required to either wait 30 days following the Warden's receipt of her compassionate release request, or exhaust all administrative remedies prior to approaching the Court, whichever happens earlier. *See* 18 U.S.C. § 3582(c)(1)(A). However, the Court may waive these administrative exhaustion requirements, and should do so here.

Under the First Step Act, although a prisoner seeking to alter his conditions of imprisonment generally must exhaust administrative remedies before resorting to judicial intervention – the inmate need not exhaust *unavailable* administrative remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) ("An inmate, that is, must exhaust

available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust—although significantly different from the 'special circumstances' test or the old CRIPA standard—has real content. As we explained in *Booth,* the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'  *1859 532 U.S., at 737–738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)); *see also* Random House Dictionary of the English Language 142 (2d ed. 1987) ('suitable or ready for use'); 1 Oxford English Dictionary 812 (2d ed. 1989) ('capable of being made use of, at one's disposal, within one's reach'); Black's Law Dictionary 135 (6th ed. 1990) ('useable'; 'present or ready for immediate use'). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' *Booth,* 532 U.S., at 738, 121 S.Ct. 1819.") (quotation marks omitted).  Indeed, courts throughout the country have continued to waive the administrative exhaustion requirements under the First Step Act, where circumstances warrant. *See Washington v. Bur. of Prisons*, No. 1:19-CV-01066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (in addressing motion for recalculation of good time credit under the First Step Act, the court explained that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile."); *United States v. Walker*, No. 3:10-cr-00298-RRB-1, [Dkt. 110] (D. Or. Feb. 7, 2019) (finding that, although the defendant failed to exhaust administrative remedies, the Court had jurisdiction to order recalculation of defendant's good time credit under the First Step Act and to order defendant's release if his term of imprisonment had expired); *see*

*also Gurzi v. Marques*, No. 18-CV-3104- NEB-KMM, 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (despite prisoner's failure to exhaust administrative remedies, addressing the merits of prisoner's objections to his designation, in part under the First Step Act, as "the Court observes that it has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate.").

The President of the United States and his advisers have continuously warned the American people that the peak of the virus during the next coming weeks could be a national catastrophe, projecting anywhere between 100,000 and 240,000 deaths. *See* CNBC, *White House predicts 100,000 to 240,000 will die in US from coronavirus*, April 9, 2020, available at https://www.cnbc.com/2020/03/31/trump-says-the-coronavirus-surge-is-coming-its-going-to-be-a-very-very-painful-two-weeks.html. The futility and potentially irreparable harm of requiring **MS. BARCHA** to wait a minimum of 30 days, after the peak of the virus, to exhaust her administrative remedies are manifest. **MS. BARCHA** seeks this emergency relief to avoid contracting COVID-19 at FCI Aliceville where she has a high risk of infection: "social distancing" is impossible in the crowded facility, and disinfecting products are scarce. Waiting for **MS. BARCHA** to exhaust her administrative remedies during the peak of the coronavirus spread in the United States would only compound her risk of exposure to COVID-19. Should she contract the virus while waiting for an administrative response any remedy will come too late – **MS. BARCHA** will be in mortal danger, causing her potentially irreparable physical harm, and rendering this compassionate release request utterly moot. The rapid spread of COVID-19 during these next coming weeks effectively makes the administrative remedies unavailable to **MS.**

**BARCHA**.   Under these extraordinary circumstances, the Court should waive the administrative exhaustion requirement in § 3582.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 88.9

The undersigned contacted counsel for the United States, James Hayes and requested his position on the instant motion.  He advised counsel that the government opposes the relief requested herein.  It takes the position that the Court does not have jurisdiction for thirty (30) days from the date the letter was sent to the Warden. (March 31, 2020.)

WHEREFORE, the Defendant, **ODETTE BARCHA**, respectfully requests that this Honorable Court grant the relief sought herein and order **MR. BARCHA** released from prison to serve the remainder of her sentence on home confinement.

.                                                                    Respectfully submitted,

**RABIN & LOPEZ, P.A.**
800 Brickell Avenue
Suite 1400
Miami, FL  33131
Tel:  305•358•1064
Email:  sjr@miamilawyer.com

*s/ Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

*s/ Andrea C. Lopez*
ANDREA C. LOPEZ
Florida Bar № 109512

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April 2020, a true and correct copy of the foregoing was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

*s/ Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.