United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff </br></br> v. </br></br> Odette Barcha, Defendant. | Criminal Case No. 16-20549-CR-Scola </br></br> Inmate No. 13741-104 |

### Order on Defendant's Motion for Compassionate Release

Now before the Court is the Defendant Odette Barcha's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), requesting that the Court release Barcha from prison due to threat posed by the Covid-19 pandemic. For the reasons set forth below, the Court **grants** the Defendant's motion (**ECF No. 1492**).

As we all know, the Covid-19 pandemic poses a serious danger to society, and especially to at-risk or vulnerable inmates. Despite the efforts taken by the Federal Bureau of Prisons intended to keep inmates safe (which are outlined in the Government's response), the Federal Bureau of Prisons cannot guarantee that any given inmate will not get sick and die from Covid-19, especially since inmates are confined in relatively close quarters. (*See* ECF No. 1494 at 3-4.) In light of this unprecedented situation, Attorney General Barr has urged the Bureau of Prisons to transfer inmates to home confinement where appropriate to decrease the risks to their health. Memorandum from the Attorney General (Apr. 3, 2020). The memorandum states that inmates over 60 years of age with severe pre-existing medical conditions serving sentences for non-violent crimes may be transferred to home confinement. (*Id.* at 2.) After an inmate has exhausted his or her administrative remedies with the Bureau of Prisons or the warden,[1] an inmate may file a motion with the district court requesting compassionate release under 18 U.S.C.A. § 3582(c)(1)(A) due to "extraordinary and compelling" circumstances.

---

[1] Under 18 U.S.C.A. § 3582(c)(1)(A), the Court may consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Under the relevant Sentencing Guidelines Policy Statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that. . . extraordinary and compelling reasons warrant a reduction." § 1B1.13. The Court must also find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at policy stmt. Based on this framework, in order to qualify for compassionate release, the Court must find extraordinary and compelling reasons warrant Barcha's release, that she is not a danger to the community, and consider the factors in 18 U.S.C. § 3553(a).

Courts have repeatedly held that if an inmate has a chronic medical condition that has been identified by the Centers for Disease Control as elevating an inmate's risk of becoming seriously ill from COVID-19, that condition may constitute "extraordinary and compelling reasons." *See, e.g., United States v. Oreste*, Case No. 14-20349 (S.D. Fla. Apr. 6, 2020) (Scola, J.); *United States v. Minor*, Case No. 18-80152 (S.D. Fla. Apr. 17, 2020) (Middlebrooks, J.); *United States v. Platten*, Case No. 08-cr-80148 (S.D. Fla. Apr. 17, 2020) (Middlebrooks, J.); *United States v. Nieves Suarez*, Case No. 18-20175 (S.D. Fla. Apr. 20, 2020) (Cooke, J.). Therefore, the question for the Court is whether Barcha's health conditions coupled with the coronavirus pandemic constitute "extraordinary and compelling" reasons warranting her immediate release.

Barcha suffers from a chronic condition called Lupus, which is a type of autoimmune disease that compromises her immune system's ability to fight viruses. The Centers for Disease Control has flagged Lupus, as well as similar immune deficiencies, as a condition which puts those who have it at a high risk of contracting a severe case of Covid-19.[2] She also has rheumatoid arthritis, diverticulitis, and hypertension. She argues that these conditions, especially coupled with Lupus, can greatly increase the complications from the coronavirus. *Crucially, the medical staff at FCI Aliceville where she is confined as well as the warden of that institution, Patricia V. Bradley, both recommended that she be released from prison due to her severe medical conditions.* (ECF No. 1494-2.) Based on the increased risk of death posed by COVID-19 pandemic and Barcha's severe health conditions, the Court finds that extraordinary and compelling reasons warrant Barcha's release.

The Court must also evaluate whether Barcha is a danger to the safety of others or the community under 18 U.S.C. § 3142(g). On January 23, 2019,

---

[2] Center for Disease Control and Prevention, *Cases in U.S.*, updated April 5, 2020, at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

Barcha pled guilty to conspiracy to defraud the United States and pay and receive healthcare kickbacks. She has no history of committing violent offenses, and tellingly, the Government does not argue that she is a danger to the community. Moreover, she accepted responsibility for her actions, cooperated with the Government, and testified as a government witness at the trial of her co-defendant Philip Esformes. That she was convicted of a nonviolent crime and has no history of violence shows that she is not a danger to the safety of others or the community.

Lastly, the Court will consider the applicable 18 U.S.C. § 3553(a) factors. Here, the nature and circumstances of the offense and the history and characteristics of the offender, *see* § 3553(a)(1), coupled with the need to ensure adequate punishment, deterrence, and community protection, *see id.* at (a)(2)(A-C), and to avoid unwarranted disparity, *see id.* at (a)(6), do not warrant her continued incarceration. As stated above, Barcha does not have a history of committing violent offenses, nor does she pose a danger to the community. Moreover, her truthful cooperation with the Government culminating in her testifying against her co-defendant Philip Esformes shows that she has been rehabilitated. She was sentenced to fifteen months in prison for her crime, and, as of today, she has served almost five out of the fifteen months. She would likely be released to a half-way house in a little over four months (with six months remaining on her sentence), so the actual reduction in her sentence due to this order is slight. Continued confinement in prison for the last few months of her sentence is unnecessary to serve the purposes of punishment under § 3553(a)(2). Every day that Barcha spends in prison, she is at risk of contracting a dangerous and severe case of COVID-19 and therefore, her release is warranted.

In sum, the Court **grants** Odette Barcha's motion (**ECF No. 1492**) and orders as follows:

1. The Defendant's sentence of imprisonment is hereby reduced to time served, effective immediately. Upon release from imprisonment, the Defendant shall comply with all standard conditions of supervised release.

2. The Defendant must report in-person to the United States Probation Office within 72 hours of her release.

The Clerk is **directed** to immediately forward a copy of this order to the Bureau of Prisons, the U.S. Marshal, and Probation.

**Done and ordered** at Miami, Florida, on May 18, 2020.

_____
Robert N. Scola, Jr.
United States District Judge